FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 06, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHERYL C.,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>　　　　　　Defendant. | No: 1:19-CV-03128-FVS<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 10, 19. This matter was submitted for consideration without oral argument. The Plaintiff is represented by Attorney D. James Tree. The Defendant is represented by Special Assistant United States Attorney Summer Stinson. The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment, ECF No. 10, and **DENIES** Defendant's Motion for Summary Judgment, ECF No. 19.

ORDER ~ 1

# JURISDICTION

Plaintiff Sheryl C.[1] filed for supplemental security income benefits on July 13, 2016, Tr. 90, alleging a disability onset date of July 1, 2016, Tr. 182, due to a right shoulder injury, depression, and arthritis, Tr. 214.  Benefits were denied initially, Tr. 126-34, and upon reconsideration, Tr. 138-44.  A hearing before Administrative Law Judge Stephanie Martz ("ALJ") was conducted on February 1, 2018.  Tr. 43-64.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ also took testimony from vocational expert Becky Hill.  *Id*.  The ALJ denied benefits on June 13, 2018.  Tr. 18-34.  The Appeals Council denied review on April 11, 2019.  Tr. 1-6.  The matter is now before this court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

# BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 43 years old as of the application date.  Tr. 182.  She received her GED and bookkeeping certificate in 1992.  Tr. 215.  Plaintiff's work history

---

[1]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 2

includes the jobs of cashier and sorter. Tr. 197, 215. Plaintiff reported that she stopped working in October of 2010 due to her conditions. Tr. 214.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The

ORDER ~ 3

party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from

ORDER ~ 4

"any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the

ORDER ~ 5

claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 13, 2016, the application date.  Tr. 21.  At step two, the ALJ found that Plaintiff has the following severe impairments: obesity; right

ORDER ~ 6

shoulder impingement syndrome/tendinitis; affective disorder; and anxiety disorder. Tr. 21. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 22. The ALJ then found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) with the following limitations:

> the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit about 6 hours and stand and/or walk about 6 hours in an 8-hour day with regular breaks; occasionally push/pull within these exertional limitations with her right dominant arm; otherwise she has no limits pushing or pulling; occasionally reach in all directions with her right dominant arm; frequently climb ramps and stairs; occasionally climb ladders, ropes or scaffolds; unlimited ability to balance and stoop; occasionally kneel, crouch, and crawl; avoid concentrated exposure to vibrations and hazards. She can understand, remember, and carry out simple and routine tasks, accept instructions from supervisors, have occasional superficial contact with the general public, and needs a routine and predictable work environment.

Tr. 24. At step four, the ALJ identified Plaintiff's past relevant work as cashier II and agricultural produce sorter and found that Plaintiff is unable to perform any past relevant work. Tr. 33. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, including scaling machine operator, laminating machine offbearer, and conveyer line bakery worker. Tr. 34. On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from July 13, 2016, through the

ORDER ~ 7

date of this decision.  Tr. 34.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 10.  Plaintiff raises the following issues for this Court's review:

   1.  Whether the ALJ properly considered lay witness statements;

   2.  Whether the ALJ properly considered Plaintiff's symptom claims;

   3.  Whether the ALJ properly considered the medical opinion evidence; and

   4.  Whether the ALJ erred at step five.

## DISCUSSION

**1.    Lay Witness Statements**

Plaintiff challenges the ALJ's treatment of statements from her friends and family regarding her limitations.  ECF No. 10 at 19-20.

Lay witness testimony cannot establish the existence of medically determinable impairments.  20 C.F.R. §§ 416.913(a)(4), 416.921.  But lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work."  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050 (9th Cir. 2006); 20 C.F.R. § 416.913(a)(4); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition.").  "If the ALJ wishes to discount the testimony of the lay witnesses,

ORDER ~ 8

1  [she] must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919.

2  The record contains nine statements from Plaintiff's friends and family. There is a Third-Party Function report completed by Plaintiff's mother from July 27, 2016 and a letter from her mother. Tr. 226-33, 267. The record also includes a statement from a former co-worker, Tr. 265, a statement from a friend of 25 years, Tr. 266, statements from two of her childhood friends, Tr. 268-70, a statement from her sister, Tr. 271, and statements from her two daughters, Tr. 272-74.

The ALJ discounted these statements by finding they were "not consistent with the medical evidence." Tr. 32. The ALJ then cited to evidence in the record demonstrating that Plaintiff had normal posture, gait, balance, thought process perception, insight and judgment. *Id*. However, nowhere in the ALJ decision did the ALJ discuss the witnesses with any specificity or discuss each statement with any specificity. Therefore, this is insufficient under *Dodrill*, 12 F.3d at 919 ("If the ALJ wishes to discount the testimony of the lay witnesses, [she] must give reasons that are germane to each witness."). The case is remanded for the ALJ to properly address the lay witness statements by providing reasons germane to each witness.

**2.   Plaintiff's Symptom Statements**

Plaintiff challenges the ALJ's treatment of Plaintiff's symptom statements by arguing that her reasons for rejecting the evidence failed to meet the specific, clear and convincing standard. ECF No. 10 at 16-19.

An ALJ engages in a two-step analysis when evaluating a claimant's

ORDER ~ 9

testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [her] impairment could reasonably be expected to cause the severity of the symptom [she] has alleged; [she] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

ORDER ~ 10

924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 25.

Defendant points to evidence in the record that Plaintiff was malingering and argues that this relieves the ALJ from providing specific, clear and convincing reasons for rejecting Plaintiff's statements. ECF No. 19 at 4-5. To relieve the ALJ of the specific, clear and convincing standard, the record must contain "affirmative evidence that the claimant is malingering." *Carmickle v. Comm'r. Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). In March of 2017, Dr. Cline completed a Psychological/Psychiatric Evaluation of Plaintiff for the Washington Department of Social and Health Services. Tr. 407-11. He provided the following statement:

> Claimant completed a Rey at the outset of today's assessment. Her score of 12 indicates an average level of effort and cooperation with the task and decreases the likelihood that she is malingering at this time. However, due to some changes observed in her MSE performance she was also given a TOMM today. Her scores of 21 and 22 each respective trial do not provide evidence of non-malingering, and as it is the more robust of the two measure the results of this test will be preferred. To be considered evidence of non-malingering scores on the second or retention trial of the TOMM should fall between 45 and 50 and scores should evidence improvement across trial. This claimant's scores only improved by 1 point (2% overall) and fail to meet the primary scoring criterion by a wide margin. Thus, malingering is diagnosed today and

ORDER ~ 11

> the following, though mainly take[n] from her previous assessment, should bet taken with great caution.

Tr. 407. Here, the ALJ addressed Dr. Cline's diagnosis of malingering in the following statement: "I give great weight is given [sic] to another opinion from Dr. Cline. In March 2017, Dr. Cline opined that he was unable to accurately assess the claimant's limitations due to malingering." Tr. 31.

The Court is limited to reviewing the reasons the ALJ actually provided for rejecting Plaintiff's symptom statements. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."). Here, the ALJ limited her discussion of the evidence of malingering to the weight assigned to Dr. Cline's opinions, and not in reference to Plaintiff's symptom statements. Therefore, Defendant's assertion is a *post hoc* rationalization, which will not be considered by this Court.

This Court will address the five specific reasons the ALJ provided for rejecting Plaintiff's symptom statements: (1) Plaintiff's daily activities are inconsistent with her complaints of disabling symptoms and limitations; (2) Plaintiff's treatment for carpal tunnel syndrome is inconsistent with her reported lack of use of her shoulder; (3) Plaintiff did not pursue treatment for her shoulder throughout the period at issue; (4) Plaintiff's ability to attend medical appointments is inconsistent with her reported difficulties leaving her home; and (5) objective

ORDER ~ 12

evidence does not support Plaintiff's allegations of disabling symptoms and limitations. Tr. 25-26.

The ALJ's first reason for rejecting Plaintiff's symptom statements, that her daily activities are inconsistent with her complaints, is not specific, clear and convincing. A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict her other testimony, or (2) "the claimant is able to spend a substantial part of [her] day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id*. (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603.

Here, the ALJ found that Plaintiff's activities of preparing her own meals, cleaning, mowing the lawn, getting along with family friends, and neighbors, watching television, and doing crosswords was inconsistent with her complaints of disabling symptoms and limitations. Tr. 25. However, the ALJ failed to provide any specific examples of how these activities are inconsistent with her reported symptoms and limitations. *Id*. Furthermore, the Ninth Circuit has cautioned ALJs about relying on the performance of typical daily activities as inconsistent with the

ORDER ~ 13

allegations of severe symptoms. *Garrison*, 759 F.3d at 1016. Here, Plaintiff's daily activities and their modified performance, including keeping her right arm close to her while performing these activities, does not undermine Plaintiff's symptom statements. Therefore, this reason fails to meet the specific, clear and convincing standard.

The ALJ's second reason for rejecting Plaintiff's symptom statements, that her treatment for carpal tunnel syndrome is inconsistent with her reported lack of use of her upper extremities, is not specific, clear and convincing. On December 28, 2016, Plaintiff was assessed for bilateral carpal tunnel syndrome. Tr. 588-98. There is little treatment for carpal tunnel syndrome in the record. Plaintiff testified that the onset of the condition was prior to the alleged onset date for disability. Tr. 55. An onset prior to the relevant period of an impairment caused by repetitive use of her upper extremities does not support the ALJ's conclusion that Plaintiff's use during the relevant period was more than she alleged. Therefore, this reason does not meet the specific, clear and convincing standard.

The ALJ's third reason for rejecting Plaintiff's symptom statements, that she failed to seek treatment for her shoulder impairment during the relevant period, is not supported by substantial evidence and is not specific, clear and convincing. Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. 20 C.F.R. § 416.930; *Fair*, 885 F.2d at 603; *Macri v. Chater*, 93 F.3d

ORDER ~ 14

540, 544 (9th Cir. 1996) (finding the ALJ's decision to reject the claimant's subjective pain testimony was supported by the fact that claimant was not taking pain medication).

Here, the ALJ found that Plaintiff did not pursue treatment for her shoulder throughout the period at issue and cited to the entire medical records section of the administrative record. Tr. 26. However, the medical evidence shows that Plaintiff routinely sought treatment to help alleviate her shoulder pain. In July of 2015, Plaintiff began new medication to help control her pain. Tr. 365. In March of 2016, Plaintiff's medications were increased to help control her pain. Tr. 346. In June of 2016, Dr. Foster stated that Plaintiff may consider physical therapy if she experienced no improvement with a change in mediations. Tr. 329. However, the record shows that back in 2011, Dr. Scott stated that there was no further treatment beneficial for her chronic right shoulder pain. Tr. 389. On September 27, 2016, Plaintiff had a follow up on her right shoulder impairment. Tr. 599-603. On December 28, 2016, Plaintiff was seen for a follow up on her shoulder impairment, and was instructed to treat it with medications and rest. Tr. 588-98. On March 20, 2017, an MRI of Plaintiff's shoulder was ordered. Tr. 524-32. At the hearing, she testified that Dr. Jackson ordered an MRI, but she was never contacted regarding having one done. Tr. 54-55. On June 21, 2017, Plaintiff was seen at a follow up for her shoulder pain. Tr. 504-13. Therefore, the ALJ's conclusion that Plaintiff did not seek treatment is not supported by substantial evidence. She consistently

ORDER ~ 15

sought treatment for the pain associated with her shoulder impairment. Additionally, the record reflects that no provider has stated that additional treatment would restore Plaintiff's functional ability.  *See* S.S.R. 18-3p (before a claimant's application can be denied based on the finding that she failed to follow prescribed treatment, the record must reflect that treatment is expected to restore the claimant's ability to perform substantial gainful activity).  Therefore, this reason fails to meet the specific, clear and convincing reason.

The ALJ's fourth reason for rejecting Plaintiff's symptom statements, that Plaintiff's ability to attend her medical appointments was inconsistent with her reported difficulties in leaving her house, is not supported by substantial evidence. Plaintiff testified at the hearing that "I barely leave my house, except for appointments," Tr. 50, and "I just don't want to go out, because I – when I do, I just want to get back in the house.  I just can't make myself a lot of times get out there and go," Tr. 54.  She even reported to her providers that she struggled to leave the house if leaving was not necessary.  Tr. 447.  Therefore, the ALJ's conclusion that her statements are inconsistent with her ability to attend treatment sessions is not supported by the record.  Plaintiff did not report she was unable to leave the house.  Her ability to attend medical appointments is consistent with the severity of symptoms she reported.  Therefore, this reason is not supported by substantial evidence.

The ALJ's final reason for rejecting Plaintiff's symptom statements, that

ORDER ~ 16

they were inconsistent with the objective medical evidence, is not specific, clear and convincing. Objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects," but it cannot serve as the only reason for rejecting a claimant's credibility. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Since the other two reasons the ALJ provided for rejecting Plaintiff's symptom statements failed to meet the specific and legitimate standard, this reason alone is insufficient to support the ALJ's determination. Therefore, the case is remanded for the ALJ to properly address Plaintiff symptom statements.

3. **Medical Opinions**

Plaintiff challenged the ALJ's treatment of multiple medical opinions in the record. ECF No. 10 at 3-16. Since the case is being remanded for the ALJ to properly address lay witness statements and Plaintiff's symptom statements, the ALJ will also readdress the medical opinions in the file and make a new RFC determination.

4. **Step Five**

Plaintiff challenges the ALJ's step five determination by asserting that the ALJ failed to identify specific jobs in substantial numbers a person could do despite the RFC limitations identified. ECF No. 10 at 20-21.

At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to prove that, based on the claimant's RFC, age, education, and past

ORDER ~ 17

work experience, she can do other work. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. §§ 416.920(g), 416.960(c). The Commissioner may carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The vocational expert may testify as to: (1) what jobs the claimant, given her RFC, would be able to do; and (2) the availability of such jobs in the national economy. *Tackett*, 180 F.3d at 1101. If the claimant can perform jobs which exists in significant numbers either in the national economy, the claimant is not disabled. 42 U.S.C. § 1382c(a)(3)(b). The burden of establishing that there exists other work in "significant numbers" lies with the Commissioner. *Tackett*, 180 F.3d at 1099.

Here, the vocational expert testified that a hypothetical individual of Plaintiff's age, education, work experience, and RFC could perform the requirements of representative jobs such as scaling machine operator (61,000 jobs in the national economy), laminating machine offbearer (150,000 jobs in the national economy), and conveyer line bakery worker (196,000 jobs in the national economy). Tr. 34, 62.

Plaintiff argues that the vocational expert did not provide the correct number of jobs for the occupations identified. ECF No. 10 at 20-21. However, the ALJ has been instructed to make a new RFC determination upon remand. *See supra*. Therefore, the ALJ will also call a vocational expert at the remand proceedings and

ORDER ~ 18

take testimony regarding step five and jobs available in the national economy.

## CONCLUSION

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, it is not clear from the record that the ALJ

ORDER ~ 19

would be required to find a claimant disabled if all the evidence were properly evaluated. Therefore, the Court remands this case for further proceedings consistent with this Order.

On remand, the ALJ should readdress the lay witness statements, readdress Plaintiff's symptom statements, reweigh the medical opinions, make a new RFC determination, and take testimony from a vocational expert in formulating any step five determination. In addition, the ALJ should supplement the record with any outstanding medical evidence.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 10, is **GRANTED, in part,** and the matter is remanded for further proceedings consistent with this Order.

2. Defendant's Motion for Summary Judgment, ECF No. 19 is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Plaintiff, and **CLOSE** the file.

DATED: July 6, 2020.



Stanley A. Bastian
United States District Judge

ORDER ~ 20